918 A.2d 1266

**Richard A. DOYLE et al.**

v.

**FINANCE AMERICA, LLC.**

**No. 540, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

March 15, 2007.

372

John A. Mattingly, Jr., Lexington Park, M.D., for appellant.

Brian L. Moffet, Baltimore, for appellee.

Panel EYLER, JAMES R., ADKINS, THIEME, RAYMOND G. JR. (Retired, specially assigned), JJ.

THIEME, J.

This case arises from a dispute over the collection of interest associated with a mortgage loan. Appellants, Richard A. Doyle and Ruth M. Doyle, brought suit against appellee, Finance America, LLC, to recover the interest.[1] The Circuit Court for Montgomery County granted appellee's motion to compel arbitration and stayed appellants' suit pending arbitration.

Appellants challenge the court's ruling that arbitration is required and present a series of questions to this Court, which we have consolidated and rewritten as follows:[2]

---

1. Appellants filed suit on behalf of a putative class.

2. The questions, as posed by appellants, are as follows:
 I. Whether arbitration could be compelled considering the purported arbitration agreement's condition of informal resolution had not been met.[.]
 II. Whether the Doyles could be compelled to arbitrate their class action suit considering class actions were excluded from the purported arbitration agreement[.]
 III. Whether Maryland law requires the adverse party to refuse to arbitrate prior to petitioning a court to compel arbitration[.]
 IV. Whether the purported arbitration agreement is enforceable, considering the purported arbitration agreement is procedurally and substantively unconscionable[.]
 V. Whether Finance America's coercion of the Doyles renders the purported arbitration agreement procedurally unconscionable[.]
 VI. Whether the excessive cost of arbitration renders the purported arbitration agreement substantively unconscionable[.]
 Appellee presents the following questions:

I. Does the plain language of the arbitration agreement prevent litigation from being pursued before a circuit court?

II. Does the arbitration agreement permit appellants to choose whether to proceed in arbitration or in court?

III. Is the arbitration agreement void on policy grounds?

Is the arbitration agreement unconscionable?

Finding no error, we shall affirm the decision of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

Appellants secured a mortgage loan from appellee for the purchase of a new home. Settlement for the residence was to take place on April 26, 2004. On that day, the parties executed a Dispute Resolution Agreement (the "Agreement"), which states, in part:

> Maintaining good relationships with our loan applicants and borrowers, is very important to us at Finance America, LLC (hereinafter referred to as "Lender"). We ask you to contact us immediately if you have a problem with a loan application or loan transaction with us. Often, a telephone call to us will resolve the matter amicably and as quickly as possible. However, if you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be resolved, at your option or ours, by arbitration in accordance with this agreement.

\* \* \*

---

I. Did the circuit court correctly determine, as a matter of law, that Appellants have an unconditional obligation to arbitrate their individual claims upon the request of Finance America?

II. Did the circuit court correctly determine, as a matter of law, that the parties' agreement to arbitrate is neither procedurally nor substantively unconscionable?

III. Did the circuit court correctly determine, as a matter of law, that by agreeing to arbitrate their individual claims, Appellants waived their ability to bring a putative class action in a court of law?

Only disputes involving you and us may be addressed in the arbitration. The arbitration shall not address any dispute on a "class wide" basis nor shall it be consolidated with any other arbitration proceeding. This means that the arbitration will not address disputes involving other persons that may be similar to the disputes between you and us.

Appellants assert that appellee failed to disburse the loan proceeds until April 27, 2004—the day following settlement. Appellants filed suit in circuit court to recover damages from appellee, pursuant to Maryland Code Annotated (1974, 2003 Repl.Vol.), § 7–109 of the Real Property Article. Appellee filed a motion to dismiss and motion to compel arbitration. After a hearing on the motions, appellee's motion to compel arbitration was granted and the case was stayed, pending an outcome in arbitration. This appeal followed.

## STANDARD OF REVIEW

The circuit court's order, compelling arbitration, is appropriate where a valid and enforceable arbitration agreement exists. *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 546, 649 A.2d 365 (1994). As a question of law, whether a valid and enforceable arbitration agreement exists will be reviewed *de novo*. *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 588, 894 A.2d 547 (2006).

## DISCUSSION

■ The Agreement states that "arbitration shall be governed by the Federal Arbitration Act." The Federal Arbitration Act ("FAA") is set forth under Title 9 of the United States Code. Section 2 of the Act states that an arbitration clause will not be enforceable where "any grounds ... for the revocation of any contract" apply. Because state courts "are not bound by the federal procedural provisions of the FAA," our enforcement of Section 2 requires that we "look to the pertinent Maryland law" for guidance. *Walther v. Sovereign Bank*, 386 Md. 412, 423, 872 A.2d 735 (2005). The Maryland Uniform Arbitration Act ("MUAA") is codified under Mary-

land Code Annotated (1974, 2006 Repl.Vol.), §§ 3–201 *et seq.* of the Courts and Judicial Proceedings Article ("CJ").

## I. *Plain Language of the Agreement*

The interpretation of a contract is a question of law and subject to *de novo* review. *United Servs. Auto. Ass'n v. Riley,* 393 Md. 55, 79, 899 A.2d 819 (2006). On review, we shall examine the language of the contract objectively. *8621 Ltd. P'ship v. LDG, Inc.,* 169 Md.App. 214, 226, 900 A.2d 259 (2006). " 'Where the language of the contract is unambiguous, its plain meaning will be given effect. There is no need for further construction.' " *Spengler v. Sears, Roebuck & Co.,* 163 Md.App. 220, 239, 878 A.2d 628 (2005).

Appellants argue that the Agreement is a contract of adhesion and thus must be viewed with heightened scrutiny; any ambiguity must be resolved against appellee.[3] Appellants assert that the plain language of the Agreement does not require arbitration of their claim for two reasons. First, the Agreement requires the parties to attempt an "informal resolution" prior to arbitration. This failed to occur. Second, the Agreement does not prohibit class actions from being pursued in the circuit court.

---

3. An adhesion contract "has been defined as one 'that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis by the weaker party who has no real opportunity to bargain about its terms.' " *Meyer v. State Farm Fire & Cas. Co.,* 85 Md.App. 83, 89, 582 A.2d 275 (1990) (citing *Restatement (Second) of Conflict of Laws* § 187, Comment b.). Black's Law Dictionary defines the term as a "standard-form contract prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who adheres to the contract with little choice about the terms." 342 (8th ed.2004).

There is no doubt that the Agreement constitutes a contract of adhesion. Adhesion or form contracts are not the same as an unconscionable contract and do not render the Agreement invalid, per se. *See Walther v. Sovereign Bank,* 386 Md. 412, 430, 872 A.2d 735 (2005). Instead, as appellants assert, the courts simply examine such contracts with "special care" and "construe ambiguities against the draftsman." *Id.* at 431, 872 A.2d 735.

### A. Informal Resolution

The introductory paragraph of the Agreement reads as follows:

> Maintaining good relationships with our loan applicants and borrowers, is very important to us at Finance America, LLC (hereinafter referred to as "Lender"). We ask you to contact us immediately if you have a problem with a loan application or loan transaction with us. Often, a telephone call to us will resolve the matter amicably and as quickly as possible. However, *if* you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be resolved, at your option or ours, by arbitration in accordance with this agreement.

(Emphasis added.)

Appellants assert that the word "if" creates a condition that must be satisfied prior to arbitration; specifically, an attempt must be made to informally resolve any problems that arise, prior to arbitration. We do not read the Agreement to contain such a requirement.

■ When all four sentences of the introductory paragraph are read together, it is clear that the Agreement *recommends*, but does not *require*, that disputes be resolved through informal means. The first sentence acknowledges appellee's desire to maintain "good relationships" with its borrowers. The second sentence simply "ask[s]," aggrieved borrowers to contact appellee when a problem arises—it does not "require" borrowers to contact appellee. The third sentence *suggests* that placing a telephone call to appellee might "resolve the matter amicably"—it does not *require* borrowers to place a telephone call. The fourth sentence merely recognizes that problems are not always resolved informally and, *if* the borrower and appellee "are not able to resolve [their] differences informally," arbitration must proceed.

We also note that appellants are the moving party in this case and chose to initiate formal proceedings in the circuit court. Contrary to the advice and suggestion in the Agree-

ment, appellants determined to forgo any attempts at resolving the matter amicably through informal means and filed a complaint against appellee. In essence, appellants have waived their ability to challenge the arbitration provision on this ground.

Appellants rely on *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 768 A.2d 620 (2001), for the proposition that a condition precedent contained in an arbitration agreement must be satisfied prior to proceeding with arbitration. Because we have already determined that the Agreement between appellants and appellee does not contain a condition precedent, *Wells* is inapposite.[4]

### B. Class Action Law Suits Are Barred

Appellants also claim that arbitration is not required because they are properly pursuing a class action in the circuit court. Appellants assert that the Agreement only limits their opportunity to file a class action in arbitration, leaving open the option to file a class action in the circuit court.

█ The portion of the Agreement relating to class action proceedings states as follows:

> Only disputes involving you and us may be addressed in the arbitration. The arbitration shall not address any dispute on a "class wide" basis nor shall it be consolidated with any other arbitration proceeding. This means that the arbitration will not address disputes involving other persons that may be similar to the disputes between you and us.

This paragraph must be read in conjunction with the sentence that requires arbitration: "[Y]ou and we agree that any dispute, regardless of when it arose, shall be resolved, at your

---

**4.** The arbitration agreement in *Wells* states that "any Claim based on or arising from an alleged tort, *shall* ... be submitted to mediation.... *If mediation fails to resolve the claim* ... then the Claim shall be determined by binding arbitration." *Id.* at 236–37, 768 A.2d 620 (emphasis added). The language of the arbitration agreement in *Wells* is in marked contrast to the Agreement in this case.

option or ours, by arbitration in accordance with this agreement."

The plain language of the Agreement requires that *any dispute* arising out of or in any way related to the loan *shall* be resolved by arbitration.[5] Therefore, if the Agreement bars the filing of a class action claim in arbitration, there can be no filing of a class action claim at all. Appellants contend that, without a blanket or general restriction on class action suits, they may proceed with a class action in the circuit court. Although it may have been wise to expressly include a "no-class-action" provision in the Agreement,[6] we cannot say that appellee's failure to do so renders the class action provision in the Agreement any less clear.

## II. *Arbitration Is Not Permissive*

Appellants contend that the arbitration provision "is permissive" because it "allows either party to sue *or* arbitrate."

██ This contention is simply incorrect. The Agreement pellucidly states that "any dispute ... shall be resolved ... at your *option* or ours, by arbitration." (Emphasis added.) Appellants' argument clings for life to the word "option" as though its very presence in the Agreement allows them to bring a suit in the circuit court. Like Hannibal, *"Aut viam inveniam aut faciam."* [7] To the contrary, either party has the option to proceed in arbitration and once that option is exercised, arbitration is required.

---

**5.** The Agreement contains three exceptions to the rule that all disputes must proceed in arbitration. None relate to the factual circumstances presented in this case.

**6.** In *Walther,* 386 Md. at 436–38, 872 A.2d 735, the Court of Appeals held that "no-class-action" provisions in arbitration agreements are valid and not unconscionable. Although a minority of jurisdictions take the position that "no-class-action" provisions are unenforceable, Maryland stands firm in the majority. *See id.* at 438, 872 A.2d 735.

**7.** "I'll either find a way or make one." (Quotation attributed to the Carthaginian general, Hannibal (c. 247–183 BC)).

As the moving party, appellants elected to file a lawsuit in the circuit court, which they were entitled to do pursuant to the Agreement. Had appellee preferred that venue, it could have proceeded in circuit court. Appellee desired arbitration, however, and under the plain language of the Agreement, any dispute shall be resolved by arbitration at the option of either party. Having exercised that option, arbitration must proceed.

▮ Appellants take their argument one step further. CJ § 3–207(a) states:

> *Refusal to arbitrate.*—If a party to an arbitration agreement described in § 3–202 of this subtitle **refuses to arbitrate,** the other party may file a petition with a court to order arbitration.

(Emphasis added in bold.) Appellants interpret this provision as requiring appellee to make two requests for arbitration; the first request must be denied by appellants and only after they refuse to arbitrate may the court properly rule on appellee's second request.[8]

We are convinced that CJ § 3–207(a) has been satisfied. We shall not require the parties to jump hurdles that are nonessential to proceed in arbitration, particularly when arbitration is patently mandated under the plain meaning of the Agreement. Under CJ § 3–207(c), "[i]f the court determines that the agreement [to arbitrate] exists, it shall order arbitration. Otherwise, it shall deny the petition." Having found that an arbitration agreement exists, the court ordered arbitration. We concur with that determination.

---

8. In their brief, appellants explain:

> [Appellants have] not refused to arbitrate, nor has [appellee] requested that [appellants] arbitrate. Instead, [appellee] has merely responded to the class action complaint by a motion to compel arbitration, without first meeting the condition precedent set by Md.Code Ann., Cts. & Jud. Proc. § 3–207(a). In fact, [appellee] did not even allege that it made a request for arbitration that was refused by [appellants].

### III. Policy Considerations

An arbitration agreement is valid and enforceable unless grounds exist that would render the arbitration agreement revocable as a contract. CJ § 3–206(a). Appellants assert that the Agreement is invalid and unenforceable for two reasons. First, the Agreement is repugnant to the public policy of Maryland. Second, the Agreement is procedurally and substantively unconscionable. We shall address the unconscionability claim in Part IV of this opinion.

■■■ Appellants argue that the Agreement is "nothing more than a thinly veiled exculpatory agreement" that denies consumers access to the courts while preserving appellee's ability to file certain claims in court. In support of their policy argument, appellants note that "the nation's largest funders and guarantors of home loans . . . have . . . banned the use of pre-dispute arbitration provisions." This argument is, in essence, nothing more than a policy-based assault on the shortcomings of arbitration. Dèjá vu.

In *Bel Pre Med. Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 319–20, 320 A.2d 558 (1974), we stated:

> The Uniform Arbitration Act constitutes a radical departure from the common law. Executory agreements to arbitrate are to be deemed "valid, irrevocable and enforceable," and suits to compel arbitration or to stay the action of a court pending arbitration may now be brought. The prime purpose of these provisions is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled and administered according to the parties' agreement to arbitrate. Thus, by its enactment, the General Assembly established a policy in favor of the settlement of disputes through the arbitration process and ended the ambivalence of courts under the common law. Not only suits to enforce an arbitrator's award, but also suits to compel arbitration and suits to stay court action pending arbitration, are now to be viewed as "favored" actions.

(Internal citations omitted.)

Since our announcement *in Bel Pre Med.*, 21 Md.App. 307, 320 A.2d 558, this Court and the Court of Appeals have

continued to recognize the legislative policy favoring enforcement of arbitration agreements. *See Questar Homes of Avalon, LLC v. Pillar Constr., Inc.,* 388 Md. 675, 684, 882 A.2d 288 (2005) (The MUAA "expresses the legislative policy favoring enforcement of agreements to arbitrate." (internal cite omitted)); *Holmes,* 336 Md. at 541, 649 A.2d 365 ("The same policy favoring enforcement of arbitration agreements is present in both" the MUAA and the FAA.); *The Redemptorists v. Coulthard Servs., Inc.,* 145 Md.App. 116, 150, 801 A.2d 1104 (2002) (Maryland law "reflect[s] a strong public policy in favor of arbitration."); *Howard County Bd. of Educ. v. Howard County Educ. Ass'n, Inc.,* 61 Md.App. 631, 641, 487 A.2d 1220 (1985) (recognizing the legislative policy "in favor of" arbitration agreements); *Southern Maryland Hosp. Ctr. v. Edward M. Crough, Inc.,* 48 Md.App. 401, 406, 427 A.2d 1051 (1981) ("Arbitration is a 'favored' process in Maryland.").

We are keenly aware of the opposition to arbitration agreements taken by consumers and consumer-advocates. Nonetheless, arbitration agreements enjoy "favored" status in Maryland. " 'The Legislature makes the laws[ and] the Judiciary expounds them. . . .' " *Schisler v. State,* 394 Md. 519, 582, 907 A.2d 175 (2006) (quoting *City of Baltimore v. State,* 15 Md. 376, 456 (1860)). The law on this issue is clear, leaving us with nothing to decipher. We shall not entertain a debate that should be directed to the General Assembly.

## IV. *Unconscionability*

■ Unconscionability is an "extreme unfairness" in the formation or substance of a contract. *See* Black's Law Dictionary 1560 (8th ed.2004).[9] The Uniform Commercial Code allows a court to modify a contract if the contract, or any of its terms, is unconscionable. U.C.C. § 2–302 (2001). It is problematic, however, that the U.C.C. does not define unconscionability, nor does it provide any guidance as to the factors, circumstances, and standards that should be employed in making such a finding. "Unconscionability is an amorphous

---

9. Unfortunately, such a definition is but a tautology.

concept that evades precise definition. Indeed, it has been said that '[i]t is not possible to define unconscionability. It is not a concept but a determination to be made in light of a variety of factors not unifiable into formula.' " *Coady v. Cross County Bank*, No.2005AP2770, 2007 WL 188993 at ¶ 26 (Wis. App. Jan.25, 2007).

 The doctrine of unconscionability contains two components, substantive and procedural aspects. Procedural unconscionability concerns deceptive practices employed at the bargaining table. *See Holloman*, 391 Md. at 603, 894 A.2d 547. Thus procedural unconscionability looks to how the agreement was reached. It relates to the individualized circumstances surrounding each contracting party at the time of contracting. Substantive unconscionability concerns the actual terms of the contract. *Id.* "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (internal cite omitted). This is also the position taken in Maryland. *See, e.g., Walther*, 386 Md. at 431, 872 A.2d 735.

## A. Procedural Unconscionability

Certain elements of the bargaining process tend to indicate the presence of procedural unconscionability: "overwhelming bargaining strength or use of fine print or incomprehensible legalese may reflect procedural unfairness in that it takes advantage of or surprises the victim of the clause." 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed.1999). Additional factors include, but are not limited to:

> age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.

*Wisconsin Auto Title Loans v. Jones*, 290 Wis.2d 514, 534–535, 714 N.W.2d 155, 165 (2006). That the arbitration agree-

ment was presented as an adhesion contract is also significant.[10] *See Holloman,* 391 Md. at 603, 894 A.2d 547; *Walther,* 386 Md. at 453, 872 A.2d 735.

Appellants claim that the Agreement is procedurally unconscionable because they were only made aware of the need to sign the Agreement on the settlement date, after their loan had already been approved. Because the proceeds of the loan were needed to effectuate the closing, appellants argue that they were constrained to sign the loan, which was presented on a take-it-or-leave-it basis.

A similar argument was presented to the Court of Appeals in *Walther,* 386 Md. 412, 872 A.2d 735.[11] Petitioners claimed that they "were provided no opportunity to review the [arbitration agreement] on the night of the closing and were provided no opportunity to review the [arbitration agreement] beyond a cursory perusal." *Id.* at 428, 872 A.2d 735. They also argued "that the arbitration agreement should [have been] set aside because the arbitration clause 'was provided on a take-it-or-leave-it basis, with no opportunity for negotiation.'" *Id.* at 430, 872 A.2d 735.

The appeal presented in *Walther* was, if anything, more compelling on this issue. The arbitration agreement in *Walther* is better characterized as an arbitration "clause." The document presented to petitioners at closing contained 17 enumerated paragraphs, the last of which was an arbitration clause. Petitioners claimed, which appellants in this case do not, that they were unaware of the presence of an arbitration clause in the document. The Court responded:

As this Court stated in the case of *Merit Music Service, Inc. v. Sonneborn,* 245 Md. 213, 221–22, 225 A.2d 470, 474 (1967), "the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." *See also Vincent v. Palmer,* 179 Md. 365, 375, 19 A.2d 183, 189 (1941) (stating that, "as a

---

**10.** See footnote 3, *supra.*

**11.** *Walther* was decided 5–2 by the Court.

general rule, when one signs a release or other instrument, he is presumed in law to have read and understood its contents, and he will not be protected against an unwise agreement"); *Owens v. Graetzel,* 149 Md. 689, 696, 132 A. 265, 268 (1926) (stating that parties to mortgage are bound by its terms and "must be held to know its meaning as thereby expressed"). In the nearly-century-old case of *Smith v. Humphreys,* 104 Md. 285, 65 A. 57 (1906), Judge Boyd expressed the Court's generally critical view of such defenses to the enforcement of a contract:

> Any person who comes into a Court of equity admitting that he can read, and showing that he has average intelligence, but asking the aid of the Court because he did not read a paper involved in the controversy, and was thereby imposed on, should be required to establish a very clear case before receiving the assistance of the Court in getting rid of such document. It is getting to be too common to have parties ask Courts to do what they could have done themselves if they had exercised ordinary prudence, or, to state it in another way, to ask Courts to undo what they have done by reason of their own negligence or carelessness.

*Id.* at 290–91, 65 A. at 59.

*Id.* at 429, 872 A.2d 735.

The Court did not directly resolve petitioners' argument. Recognizing that both procedural and substantive unconscionability must exist in order to find that an arbitration agreement is invalid, the Court proceeded to "consider whether the terms in the arbitration clause [were] so one-sided as to oppress or unfairly surprise an innocent party or whether there exist[ed] an egregious imbalance in the obligations and rights imposed by the arbitration clause." *Id.* at 431, 872 A.2d 735. We shall analyze the procedural unconscionability argument further before turning to the issue of substantive unconscionability.

This issue raises a question that remains unaddressed by the Court in *Walther:* whether it is procedurally unconsciona-

ble for a mortgagee to approve a loan and wait until the day of closing to present the mortgagor with an arbitration agreement that must be signed, in order that the loan proceeds be disbursed. We believe that such conduct, at least, approaches procedural unconscionability.[12]

Appellants argue that "the first time the Doyles were informed of the arbitration 'agreement' was at the settlement table." In *Walther*, petitioners argued that they were presented with a document containing an arbitration clause "on the night of the closing." *Id.* at 428, 872 A.2d 735. Appellee demands that a rule, requiring "a lender . . . to present to borrowers an agreement to arbitrate prior to settlement . . . would treat arbitration agreements differently than other contracts and thus would be contrary to established law." We disagree.[13]

At the motions hearing, the following discussion ensued between the court and counsel for appellants:

[COUNSEL]: You Honor, I would like to point out there is no dispute that this is a contract of adhesion. As such, the Court—

THE COURT: Why do you say it's a contract of adhesion?

[COUNSEL]: Because it's giv[en] on a take it or leave it basis. There was no negotiation back and forth.

THE COURT: All right.

---

**12.** Although the present action is a class action, we do not reach the question of whether there can be procedural unconscionability in a class action suit. Procedural unconscionability relates to the individualized circumstances surrounding each contracting party at the time of contracting and it seems questionable that it can be established as a general proposition for a group of contracts containing similar terms between different parties.

**13.** Both parties recognize, and we agree, that arbitration agreements must be treated like any other contract. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (The courts must "place arbitration agreements upon the same footing as other contracts.").

[COUNSEL]: In fact, if they want the loan, it even states in [the Agreement that] . . . they have to sign this. Obviously, there's not equal bargaining power between the two parties.

THE COURT: They go to some other lender.

[COUNSEL]: That's true.

THE COURT: There's not a lack of lenders. Adhesion occurs when there's no negotiation and no choice of party with whom to negotiate.

[COUNSEL]: You Honor, obviously I would argue that anytime you have unequal bargaining power in the context of this—

THE COURT: All contracts are negotiated with unequal bargaining power. Let's start from that premise. They all start that way.

\* \* \*

THE COURT: We're never on the same playing field. . . .

While it may be true that appellants were not initially limited to appellee as the only lender available for a mortgage loan, the court's response to counsel fails to consider that appellants, at settlement, were required to sign the Agreement or possibly risk some adverse consequences related to their new commitment. No documents that appellants may have signed were presented to the court during the motions hearing. We have no knowledge of the nature of the contract that appellants entered into for the purchase of the home, what loan documents appellants may have initially executed, and what, if any, penalties appellants may have incurred by refusing to execute the arbitration agreement. No evidence was presented of appellants' age, education, intelligence, business acumen and experience, whether the terms were explained to them, whether alterations in the printed terms would have been permitted by appellee, or whether there were alternative providers of the subject matter of the contract.

In *Walther,* the Court noted that petitioners "did not allege that they needed to negotiate and were rebuffed by respondent. . . ." *Id.* at 431 n. 6, 872 A.2d 735. We are aware that the

same argument could be made in this case. This argument is unpersuasive. If appellants had challenged appellee's presentation of the Agreement, they would be then faced with two adverse results, one resulting within seconds of saying, "No, we refuse to sign," or one resulting later, such as litigation concerning this identical issue. It is not difficult to imagine that, faced with such a Hobson's choice, they would have signed the Agreement.

### B. Substantive Unconscionability

Appellants claim that the Agreement is substantively unconscionable because fees associated with arbitrating this dispute will consume more than the amount of their claim. Appellants estimate that they will be required to pay, at a minimum, $1,550 to arbitrate a claim worth only $1,539. The total value of $1,550 is comprised of two expenses: (1) a filing fee and a case service fee amounting to $950, and (2) the arbitrator's compensation, which will be no less than $600.[14]

In support of this allegation, appellants rely on two affidavits. The first was filed in a case in the United States District Court for the Eastern District of Virginia, which disclosed that in an AAA administered dispute, the National Rules for the Resolution of Employment Disputes would apply and the median daily rate of an arbitrator's compensation is $1,500. The second affidavit was filed in the District Court, Boulder County, State of Colorado, applying the AAA's Arbitration Rules for the Resolution of Consumer–Related Disputes, establishing that the median daily rate of arbitrator compensation is $1,500.

Appellee contends that the estimated fees and expenses claimed by appellants are "misplaced" and constitute "mere speculation." Appellee maintains that appellants' affidavit regarding AAA rules for employment disputes is irrelevant to

---

14. The filing fee and case service fee of $950.00 is based on the "Commercial Arbitration Rules and Mediation Procedures" for the American Arbitration Association ("AAA"), a copy of which is included in the record extract. The estimates for the arbitrator's compensation are based on a random sampling of fees conducted by the AAA in 2001.

consumer related disputes, and as to the affidavit from Colorado, the "Supplementary Procedures" of the AAA apply to this consumer dispute, which provide:

> If the consumer's claim or counterclaim does not exceed $10,000, the consumer is responsible for one-half the arbitor's fees up to a maximum of $125.

Appellee further contends that, even if appellants' estimate of the fees and expenses is accurate, appellee "has acknowledged and agreed to pay the costs associated with proceeding in arbitration...."

Again, *Walther* proves instructive. Presented with a similar argument, the Court relied on the pronouncements of the United States Supreme Court in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), and the United States Court of Appeals for the Fourth Circuit in *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir.2001). As explained by the Court of Appeals of Maryland,

> [t]he Supreme Court ... reversed the Eleventh Circuit's holding that the arbitration agreement's silence as to the filing fees, arbitrators' costs, and other arbitration expenses had rendered the arbitration provision unenforceable because it exposed the buyer to potentially steep arbitration costs. *[Green Tree Financial*, 531 U.S.] at 84, 121 S.Ct. [513]. Acknowledging that the *Green Tree Financial* parties had provided no detail of the expected arbitration fees and costs, the Supreme Court observed that while "the existence of large arbitration costs could preclude a litigant" of limited resources from effectively pursing her claims in an arbitral forum, "[t]he 'risk' that [the buyer] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 90–91, 121 S.Ct. [513] (alteration added). Effectively, *Green Tree* Financial placed upon the party asserting the prohibitive expense "the burden of showing the likelihood of incurring such costs." *Id.* at 92, 121 S.Ct. [513].

*Id.* at 439–440, 872 A.2d 735.

The Court continued:

In a case decided shortly after *Green Tree Financial*, the United States Court of Appeals for the Fourth Circuit observed it would be inappropriate to apply a broad per se rule to the efficacy of an arbitral forum:

> The cost of arbitration, as far as its deterrent effect, cannot be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are "too high." Rather, an appropriate case-by-case inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs. Another factor to consider in the cost-differential analysis is whether the arbitration agreement provides for fee-shifting, including the ability to shift forum fees based upon the inability to pay. We note that parties to litigation in court often face costs that are not typically found in arbitration, such as the cost of longer proceedings and more complicated appeals on the merits.

*Bradford v. Rockwell Semiconductor [Sys.], Inc.*, 238 F.3d 549, 556 n. 5 (4th Cir.2001) (rejecting argument that arbitration clause containing a fee-splitting provision which required employee to share the arbitration costs and pay half the arbitrator's fee rendered the arbitration agreement per se unenforceable).

*Id.* at 440–441, 872 A.2d 735.

At the motions hearing, the trial court stated:

> I've read the papers and I think I'm satisfied that I'm familiar with them. But I'd be happy to have any additional factual information identified first and then I'd hear from you (sic) legal argument.
>
> [APPELLANTS' COUNSEL]: Your Honor, the plaintiff would have no additional factual submissions for the Court at this time.

The trial court indicated that it had before it "a motion to compel arbitration and to dismiss by the defendants against

Finance America with opposition thereto." [15]

As indicated, no evidence was presented by appellants to demonstrate the excessive costs of the arbitration forum. Although the question of whether a contract is unconscionable is a question of law and subject to *de novo* review, the factual findings of the trial court that inform its judgment are subject to the clearly erroneous standard. *See, e.g., Monetary Funding Group, Inc. v. Pluchino,* 87 Conn.App. 401, 867 A.2d 841, 848 (2005) (*"[T]he factual findings of the trial court that underlie [an unconscionability] determination are entitled to the same deference on appeal that other factual findings command."*); Md. Rule 8–131(c). As the Court of Appeals has recognized, "the burden of showing the likelihood of incurring such costs" is "placed upon the party asserting the prohibitive expense." *Id.* at 440, 867 A.2d 841. In *Walther,* the Court did not conclude that the arbitration clause was substantively unconscionable "[b]ecause the fees arising from the arbitration [could not] be predicted in detail and petitioners [did] not show them to be unduly burdensome." *Id.* at 422, 872 A.2d 735. We are compelled to conclude the same.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

---

**15.** The parties' actual pleadings were not included in the Record Extract.