582 A.2d 275

**Penelope MEYER, et al.**

v.

**STATE FARM FIRE AND CASUALTY COMPANY.**

**No. 981, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 28, 1990.

Dennis P. Casey, Salisbury, for appellants.

Roland C. Kent, Denton, for appellee.

Argued before WILNER, C.J., and BISHOP and ALPERT, JJ.

WILNER, Chief Judge.

For over 100 years, it has been common—indeed standard—for fire insurance policies to contain a clause requiring disputes concerning the amount of a covered loss suffered by the insured to be resolved through an appraisal process. Such a clause is at issue here. It provides, in relevant part, that, if the company and the insured are unable to agree on the amount of loss, either one can demand that the amount be determined by appraisal. Upon such a demand, each party is obliged to select an appraiser; the two appraisers so selected then "select a competent, impartial umpire." If the two appointed appraisers agree on an amount, that amount "shall be the amount of loss." If they are unable to agree, they submit their differences to the umpire. Written agreement signed by any two of the three then will constitute the amount of loss. The policy further provides that "[n]o action shall be brought unless there has been compliance with the policy provisions."

Appellants purchased a policy of fire insurance containing that clause from appellee. A fire occurred at their home, but, unfortunately, they and the company were unable to agree on the amount of loss. Although it is not entirely clear from the Agreed Statement of the Case that constitutes the record in this appeal, it appears that the company, at some point, sought to invoke the appraisal process. Appellants instead filed suit for damages in the Circuit Court for Wicomico County, contending that the appraisal provisions were invalid. The basis of their claim was that

(1) Maryland Declaration of Rights, art. 23 provides that the right of jury trial of "all issues of fact in civil proceedings" where the controversy exceeds $500 shall be "inviolably preserved," (2) this controversy exceeds $500, (3) enforcement of the appraisal provision would effectively remove their right to have a jury determine the extent of their loss, (4) although the Constitutional right to a jury trial may be waived, the waiver must be a knowing, voluntary, and intentional one, and (5) because the policy was a contract of adhesion and because they were actually unaware that it contained the appraisal provision, there was no effective waiver of their Constitutional right.

█ The company moved to dismiss the action. Though conceding the factual averments of appellants' complaint for purpose of the motion, it contended that the dispute resolution clause was not invalid and that, by omitting to allege compliance with it, appellants had failed to state a claim upon which relief could be granted. The court found merit in that defense and dismissed the action. Hence, this expedited appeal in which the single issue, as framed by the company, is presented: "Is the enforcement by the courts of policy provisions which make an appraisal, if invoked by the insurer, a condition precedent to suit by the insured, an unconstitutional deprivation of the right to trial by jury?" We shall answer that question in the negative and thus affirm the judgment entered below.

It does not appear that the Maryland Court of Appeals has ever considered this precise question. It has, however, on a number of occasions upheld and enforced clauses just like this one.

In *Caledonian Ins. Co. v. Traub*, 83 Md. 524, 35 A. 13 (1896), the Court had before it a clause very similar to the one at issue here. The question was not the validity of the clause but rather the procedure used to implement it. The Court viewed the appraisal procedure as a form of arbitration and regarded the appraisers as arbitrators. It said, at 533:

"The ascertainment of the amount of the loss by appraisement was a condition precedent to the payment of the sum of money for which the Insurance Company was liable. And it was the duty of each of the parties to the contract of insurance to select an appraiser. If the insured should refuse to perform this duty, he would be disabled to recover in a suit on the policy."

*See also Caledonian Fire Ins. Co. v. Traub*, 86 Md. 86, 37 A. 782 (1897).

The Court considered this provision again in *Conn. Fire Ins. Co. v. Cohen*, 97 Md. 294, 55 A. 675 (1903) and *Shawnee Ins. Co. v. Pontfield*, 110 Md. 353, 72 A. 835 (1909). In both of those cases, the appraisal process was resorted to but failed when the appraisers appointed by the parties could not agree either on an amount or on the selection of a neutral umpire. In dealing with that circumstance, the Court held in *Shawnee*, 110 Md. at 360–61, 72 A. 835:

"The right of the insured to bring the suit is not derived from the agreement to submit to appraisement. His policy is the source of his title, and if he in good faith complies with its terms and is in no way chargeable with the failure of the appraisers to make the appraisement, his right to maintain the action is complete. The primary obligation of the insurer is to pay the loss, and it is the right of the insured to enforce that obligation. The agreement to submit to appraisement only provides a means of ascertaining the loss. If that means fails without his fault, the rights of the insured under his policy are not by reason thereof forfeited."

In *Aetna Cas. & Sur. v. Ins. Comm'r*, 293 Md. 409, 445 A.2d 14 (1982), the Court confirmed much of what it had said in the earlier cases. In particular, though noting contrary views of other courts, it restated its conclusion that the contractual appraisal process constituted a form of arbitration and that the law governing arbitration—including its recognition of that process as a favored one—was applicable. It therefore held that, in the event one party

resisted a demand to subject a dispute to the appraisal process, the other party could bring an action to compel resort to that process. *See also Brethren Mutual Ins. v. Filsinger*, 54 Md.App. 357, 458 A.2d 880, *cert. denied*, 296 Md. 223 (1983) where, following *Aetna*, we restricted judicial review of the appraisers' award to that applicable in arbitration cases.

The United States Supreme Court has also upheld the standard appraisal clause in fire insurance policies. In *Hamilton v. Liverpool & London & Globe Ins. Co.*, 136 U.S. 242, 10 S.Ct. 945, 34 L.Ed. 419 (1890), the Court sustained a jury instruction in an action on the policy that, if the insured refused to submit to the appraisal process, the jury must return a verdict for the insurer. In so doing, it held, at 255, 10 S.Ct. at 949:

"The appraisal, when requested in writing by either party, is distinctly made a condition precedent to the payment of any loss, and to the maintenance of any action. Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country."

*See also Hardware Dlrs. v. Glidden*, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931), where the Court upheld, against due process and equal protection challenges, a State statute *requiring* fire insurance policies to contain an appraisal clause.

The precise question raised here, of whether an appraisal (or arbitration) clause contravenes a party's right to a jury trial, has been considered by some other courts, but usually without much discussion. In *Berkovitz v. Arbib Houlberg*, 230 N.Y. 261, 130 N.E. 288 (1921), the New York Court of Appeals sustained the New York arbitration act against such an attack, stating simply that the right to a jury trial is one that may be waived. In *Appalachian Insurance Co. v. Rivcom Corp.*, 130 Cal.App.3d 818, 182 Cal.Rptr. 11

(1982), an intermediate appellate court rejected an attack on a California statute requiring an appraisal clause in insurance policies on the theory that the clause did not constitute a total deprivation of the right to jury trial. At 825, 182 Cal.Rptr. 11, it noted:

"Thus, [the insured] is not without jury trial rights. It simply has no jury trial right as regards the setting of the dollar amount of the loss under the policy, where the Legislature has established a standard form of policy providing for a particular procedure to be followed in one narrow aspect of the claim process. To hold otherwise would be to do violence to a longstanding and well settled body of law, where there is no reason to do so."

A similar result, but on a somewhat different basis, was declared in *Eden Corporation v. Utica Mutual Insurance Company,* 350 F.Supp. 637 (W.D.Va.1972), where the court sustained a Virginia statute requiring an appraisal clause. At 641, the Court held that the statute "merely provides for a fair method of determining the amount of loss, and failing that, the insured may bring suit on the policy for recovery of the amount he feels he deserves." In that suit, the court continued, the insured may request a jury trial, "thereby fulfilling the constitutional requirement."

One court, in dealing with a statute requiring this kind of clause, reached a contrary conclusion and invalidated the statute as violative of a party's right to a jury trial. In *Molodyh v. Truck Ins. Exchange,* 304 Or. 290, 744 P.2d 992 (1987), the Oregon Court construed the statute as making the process mandatory upon demand of either party and as making the award of the appraisers binding. It recognized that a party could always waive his right to a jury trial and that "[f]or this reason, common law courts long have favored appraisal clauses in contracts." It observed, however, that, at least under Oregon law, "in all instances in which appraisals were upheld, the provision was entered into voluntarily." *Id.* at 996. The statutory requirement was different. Rejecting the California rationale noted above, the Court held that the right to a jury trial imbedded

in the State Constitution "includes having a jury determine all issues of fact, not just those issues that remain after the legislature has narrowed the claims process. In many instances, the amount of the loss will be the only disputed issue." *Id.* at 997.

Unlike some of the cases noted above, we are not dealing here with a statute mandating this form of dispute resolution. It is a contractual provision. The issue is whether appellants can escape its effect because the policy was a contract of adhesion and, as they were allegedly (and for purposes of this case concededly) unaware that such a provision was in the policy, they did not knowingly, voluntarily, and intelligently waive their right to try the issue of the amount of their loss before a jury. In urging their position, we think that the appellants give too expansive a meaning to both the requirements for waiving their right to a judicial resolution of the controversy and the effect of a contract of adhesion.

A contract of adhesion has been defined as one "that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Restatement (Second) of Conflict of Laws* § 187, Comment b. The comment goes on to note that such contracts "are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print." It is generally recognized that insurance policies qualify as contracts of adhesion, and so we shall assume that the policy at issue here is such a contract.

█ The fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable. A court will, to be sure, look at the contract and its terms with some special care. As in most cases, it will refuse to enforce terms that it finds unconscionable and will construe ambiguities against the draftsman; but it will not simply excise or ignore terms merely because, in the given case, they may operate to the perceived detriment of

the weaker party. *See,* in general, *Restatement (Second) of Contracts* § 211, Comment c; also *Corbin on Contracts* §§ 559, 1376.

There is no asserted ambiguity in the appraisal provision; indeed, in *Aetna Cas. & Sur., supra,* 293 Md. at 420, 445 A.2d 14, the Court declared such a provision "plain and unambiguous." Nor do we see anything unconscionable about it. The appraisal process has generally been regarded by the courts as a fair method of resolving disputes over the amount of loss. As Appleman notes, rather than being stricken down as unconscionable, appraisal provisions are usually *upheld* on grounds of public policy "since they tend to fair dealing and the prevention of litigation." J. Appleman, *Insurance Law and Practice* § 3921. Moreover, although certainly standard language in the policy, the appraisal provision at issue here is by no means "buried" or enunciated in the proverbial "fine print." It is worded in plain, colloquial English as part of the stated Conditions of the policy and, except for headings, is in the same size and type print as the other provisions of the policy.

 It is true, of course, that a waiver of basic Constitutional rights is not ordinarily valid unless it is knowing and voluntary. *See National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255 (2d Cir.1977); *Dreiling v. Peugeot Motors of America, Inc.,* 539 F.Supp. 402 (D.Colo.1982), applying the Seventh Amendment. It is also true that where such a waiver is founded upon a provision in a contract of adhesion, the court will, as noted above, be especially careful to protect against an unconscionable result. *See D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), sustaining the facial validity of a statute allowing for cognovit notes but noting, at 188, 92 S.Ct. at 783, that "where the contract is one of adhesion, where there is great disparity in bargaining power, *and where the debtor receives nothing for the cognovit provision,* other legal consequences may ensue." (Emphasis added.)

These precepts, however, must be weighed against the equally well-established view that favors and enforces agreements to arbitrate disputes, including disputes over insured losses. An agreement to arbitrate either future or existing disputes involves more than just the waiver of a right to jury trial, although that is certainly implicit in such an agreement. It constitutes an election to use an alternative dispute resolution mechanism that the law not only recognizes but encourages. If appellants' position were correct, the whole foundation of the Federal and uniform arbitration acts could be placed in jeopardy. Arbitration clauses are standard not only in insurance contracts but in construction contracts, employment agreements, and a variety of other contracts that may, in some instances, be regarded as being of adhesion. If the "weaker" party to such contracts were able to escape the duty to arbitrate on the premise that he was unaware of the arbitration clause and therefore had not validly waived his Federal or State Constitutional right to a jury trial, the viability of this favored method of dispute resolution would be significantly circumscribed.

█ We recognize that if the insertion of an arbitration clause in a contract is induced by *fraud,* the clause will not be enforced. *Prima Paint v. Flood & Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Nelley v. Baltimore City,* 224 Md. 1, 166 A.2d 234 (1960). But that is not the case here. On the record before us, we hold that the appraisal clause is not invalid and that the procedure required by it must be used in good faith.

JUDGMENT AFFIRMED;

APPELLANTS TO PAY THE COSTS.