988 A.2d 68

**Michael A. FREEDMAN**

v.

**COMCAST CORPORATION, et al.**

**Nos. 435, 2102, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Jan. 28, 2010.

180

184

Charles J. Piven (Yelena Trepetin, Brower Piven, on brief), Baltimore, for Appellant.

Adam S. Caldwell (Elizabeth A. Drogula, Davis, Wright, Tremaine LLP, on brief), Washington, DC, for Appellee.

Panel: WOODWARD, MATRICCIANI and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellant, Michael A. Freedman, claimed that appellee, the group of corporate entities known and commonly referred to as "Comcast," violated the 1997 Maryland Wiretapping and Electronic Surveillance Act, Md.Code (1974, 2006 Repl.Vol.), § 10–402 *et seq.* of the Courts and Judicial Proceedings Article

("CJ"). Appellant filed suit in the Circuit Court for Baltimore City and the parties filed several initial pleadings. The circuit court denied appellee's motion to compel arbitration and dismissed the suit, without prejudice.[1] Appellant twice amended his complaint, and appellee moved again to dismiss and to compel arbitration. The circuit court denied appellee's motion to dismiss but granted appellee's motion to compel arbitration and stayed the case. Appellant then timely noted this appeal.[2]

## QUESTION PRESENTED

Appellant presents one question for our review, which we have edited for clarity:

I. Did the Circuit court err in compelling arbitration of appellant's claims?

For the reasons set forth below, we affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

Appellant was a Comcast customer from approximately 2001 until the time of this suit.[3] Appellant claims that, at various times and under various circumstances, he dialed 1–800–COMCAST and he did not hear the well-known warning that his phone call might be recorded for security or training purposes. According to appellant, Comcast recorded these conversations in violation of the Maryland Wiretapping and Electronic Surveillance Act.

In May of 2007, appellee distributed a bill insert that notified customers, including appellant, of changes to their "Service Agreements." The insert gave notice of a new

---

1. Appellee has appealed this ruling in Appeal No. 435, September Term, 2008.

2. This case, Appeal No. 2102, September Term, 2008, was consolidated with Appeal No. 435 by order of this Court on August 28, 2009.

3. The record does not reflect whether appellant continues to receive services from appellee; nor is it relevant to this appeal.

arbitration provision (the "Arbitration Provision"), which we have reproduced, in part:

NOTICE FROM COMCAST REGARDING ARBITRATION

THIS NOTICE CONTAINS AN IMPORTANT CHANGE TO YOUR SUBSCRIBER AGREEMENT WITH COMCAST (THE "AGREEMENT"). PLEASE NOTE THAT THIS CHANGE TO THE AGREEMENT AS SET FORTH BELOW RESTATES AND SUPERSEDES ANY PREEXISTING PROVISION IN THE AGREEMENT CONCERNING ARBITRATION AND TAKES EFFECT THIRTY (30) DAYS AFTER THIS NOTICE WAS MAILED TO YOU (THE "EFFECTIVE DATE").

IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN THIRTY (30) DAYS FROM THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY VISITING WWW.COMCAST.COM/ ARBITRATIONOPTOUT, OR BY MAIL TO COMCAST

. . .

IF YOU DO NOT OPT OUT OF ARBITRATION IN THE MANNER INDICATED ABOVE YOUR CONTINUED USE OF THE SERVICE AFTER THE EFFECTIVE DATE SHALL BE DEEMED TO BE YOUR ACCEPTANCE OF THIS CHANGE. THIS CHANGE MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY IN WHICH YOU OR COMCAST WILL RESOLVE ANY DISPUTE WITH ONE ANOTHER.

*ARBITRATION*

a. Purpose: If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in the Agreement, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a

fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

b. Definitions: As used in this Provision, the term "Dispute" means any dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph f(2)). "Dispute" is to be given the broadest possible meaning that will be enforced. As used in this Provision, "Comcast" means Comcast Cable Communications, LLC, its officers, directors, employees and agents, and all entities using the brand name "Comcast", including your local cable company, its employees, authorized agents, and its parents, subsidiaries and affiliated companies. As used in this Provision, the term "Arbitration Provision" means all the terms of this notice.

Appellant paid the bill containing this insert and he did not choose to opt out of the new arbitration provision within the allotted time.

Appellant filed his original complaint on September 11, 2007, in the Circuit Court for Baltimore City, simultaneously moving for a temporary restraining order ("TRO"). Appellee opposed the TRO and noted its right and intent to arbitrate appellant's claims, but acknowledged that the Arbitration Provision may allow appellant to seek injunctive relief to maintain the *status quo*. The circuit court denied appellant's TRO motion on September 27, 2007.

On October 11, 2007, appellee filed a motion to compel arbitration and stay or dismiss the complaint, as well as a

separate motion to dismiss or for summary judgment,[4] which reasserted appellee's right and intent to arbitrate the dispute. That day, appellee also filed notice of removal to federal court. The case was remanded on January 31, 2008. On March 21, 2008, the circuit court granted appellee's motion to dismiss for failure to state a claim and denied appellee's motion to compel arbitration.[5]

Appellant twice amended his complaint, in May and June of 2008, and each time appellee moved to dismiss and to compel arbitration, maintaining its right and intent to arbitrate the dispute. Appellee did not seek summary judgment in these subsequent motions.

On October 22, 2008, the circuit court denied appellee's motion to dismiss but granted appellee's motion to compel arbitration and stayed the case. Appellant then timely noted this appeal.[6]

## DISCUSSION

■ In Maryland, an order of a circuit court compelling arbitration completely terminates the action in the circuit court and is an appealable final judgment under CJ § 12–301. *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 241, 768 A.2d 620 (2001) (citing *Horsey v. Horsey*, 329 Md. 392, 402–404, 620 A.2d 305 (1993); *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 41–42, 437 A.2d 208 (1981)); *accord Addison v.*

---

4. One of appellee's alternative arguments relied on a document outside of the pleading and, as such, created an alternative motion for summary judgment.

5. As noted, above, appellee seeks our review of this decision in Appeal No. 435. In light of the Court of Appeals' recent decision in *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 983 A.2d 138 (2009), the denial of a motion to compel arbitration is not a final judgment and we therefore dismiss appeal No. 435 and continue to consider only No. 2102.

6. Appellee filed a timely cross-appeal and voluntarily dismissed it pursuant to Maryland Rule 8–601(a) on March 3, 2009.

*Lochearn Nursing Home, LLC,* 411 Md. 251, 983 A.2d 138 (2009).

█ Appellant's primary argument in support of his point of error is that the parties did not agree to arbitrate his claims. Appellant also presents three alternative arguments: [7] first, that appellee waived its right to arbitrate the claims; second, that the Arbitration Provision is unenforceable because it fails to identify certain parties; and third, that the arbitration provision is unconscionable.[8]

## A. The Arbitration Provision

█ The Maryland Uniform Arbitration Act ("Maryland Arbitration Act"), now codified in Maryland Code (1974, 2006 Repl.Vol.), CJ § 3–206(a), provides:

> Except as otherwise provided in this subtitle, a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract.

A trial court's decision to compel or deny arbitration is a conclusion of law, which we review *de novo* to determine whether an agreement to arbitrate existed. *Holloman v.*

---

7. Appellant's original brief also argued that the circuit court's initial order denying arbitration precluded the order from which he appeals. Appellant later informed us that, in light of the Court of Appeal's recent decision in *Addison v. Lochearn,* he would no longer pursue this particular argument.

8. Appellee argues that appellant did not preserve these last two arguments because they were only adopted by what we might call "compound reference" (adopting a pleading that adopted yet another pleading containing the original arguments), and because that was done eleven months and three amended complaints after the points were first raised. We do not endorse this practice, but because the record reflects that appellant complied with the technical requirements of Maryland Rule 2-303(d) and served the original pleadings with each motion incorporating them by reference, appellant preserved these arguments under Rule 8-131(a).

*Circuit City Stores, Inc.,* 391 Md. 580, 588, 894 A.2d 547 (2006). The Court of Appeals has detailed its approach to these cases:

> First ... if an arbitration clause is clear, it is initially for the courts to determine whether the subject matter of a dispute falls within the scope of the arbitration clause. Second, ... in determining whether a dispute falls within the scope of an arbitration clause, arbitration should be compelled if the arbitration clause is broad and does not expressly and specifically exclude the dispute. Third, ... if an arbitration clause is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question of arbitrability ordinarily should be left to the arbitrator.

*Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 643, 824 A.2d 87 (2003) (citing *Crown Oil & Wax Co. v. Glen Constr. Co.,* 320 Md. 546, 578 A.2d 1184 (1990); *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 468 A.2d 91 (1983)) (internal quotation marks omitted).

 When construing an arbitration provision, Maryland Courts follow the objective law of contract interpretation. *Koons Ford of Balt., Inc. v. Lobach,* 398 Md. 38, 47, 919 A.2d 722 (2007).

> A court construing an agreement under this objective test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give way to what the parties thought that the agreement meant or intended it to mean.

*Id.* (quoting *Gen. Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985)).

 Appellant first argues that the amended Arbitration Provision "may not be binding on Appellant," because there is "nothing to show that Appellant accepted the Services Agreement by continuing to receive cable Service or to show that Appellant signed the Services Agreement before (or since) this action was initiated. . . ." Appellant contends that he signed and was bound only by the terms on the reverse side of several work orders.[9] Not only did appellant fail to raise this argument in the circuit court, but he conceded the point in his "Memorandum of Law in Opposition to [Appellee]'s Motion to Compel Arbitration and Stay or Dismiss [Appellant]'s Second Amended Complaint."

Appellant's reply brief points us to page three of the above memorandum, and a subsection titled "A. There is no arbitration provision in existence as to [appellant]'s claims." But the six pages of argument that follow seek to demonstrate that appellant's claims fall outside the scope of the Arbitration Provision. Nowhere therein does appellant argue that he is not a party to the Arbitration Provision. Indeed, appellant states: "The parties agree that the Circuit Court, when faced with a motion to compel arbitration pursuant to an unambiguous arbitration provision, is charged with determining whether a dispute is within the scope of the agreement." Appellant's argument is not couched in the hypothetical; nor does it incorporate by reference the argument that appellant now puts forth. Therefore, it was not preserved, and we will proceed to interpret the Arbitration Provision as a binding contract between the parties. *See* Md. Rule 8–131(a); *see also Eagan v. Calhoun,* 347 Md. 72, 88, 698 A.2d 1097 (1997) ("Generally speaking, a party will not be permitted to maintain inconsistent positions . . .") (citing 28 AM.JUR.2D *Estoppel and Waiver* § 68, at 694–95 (1966)).

---

9. These terms were limited to cable services and included a narrower arbitration provision.

Second, appellant argues that his claims fall outside the scope of the Arbitration Provision based on the text of the Arbitration Provision itself. Appellant contends that his "claims do not fall within the scope of the Arbitration Provision . . . because those claims do not fall within the unambiguous . . . definition of 'Dispute.'" The Arbitration Provision defines "Dispute" as "any dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue." Specifically, appellant argues that the term "relationship" is limited by two sentences in the preamble to the Service Agreement:

**The terms and conditions in the "GENERAL TERMS AND CONDITIONS" section below are applicable to all Services unless otherwise indicated. . . .**

**Note: This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Services.**

Appellant's brief concludes from this that "the Arbitration provision does *NOT* affect rights *NOT* with respect to Services" (emphasis in original), and that, because some of his calls may not have been service-related, the preamble places them outside the agreement. Appellant's logic is faulty. The preamble states that the agreement as a whole applies to and the Arbitration Provision affects all services, but it does not limit the agreement or Arbitration Provision to *only* services. This language does not prevent the agreement or the Arbitration Provision from applying to aspects of the parties' "relationship" that were not service-related, including the calls upon which appellant bases his claims.[10]

---

10. Appellant argues that if the Arbitration Provision were not limited to service-related disputes, the Provision's continuation clause would restrict appellee's customers to "arbitration as a forum for determining all claims one might ever have against [appellee]." Appellant argues that this is something no customer could have understood, and so the clause must be limited to service-related disputes. Again, appellant's logic fails. Although broad, the Arbitration Provision is limited to disputes arising from the customer's relationship with Comcast and

██ Third, appellant argues that we should ignore the Arbitration Provision because "the Claims have nothing to do with any contract or agreement of any sort and, similarly, have nothing to do with Appellant's relationship with [appellee]." Appellant argues that a non-customer who calls about prospective services would not have a "relationship" with appellee, and that because one or more of appellant's calls were allegedly made before he was a customer, they were not part of his "relationship" with Comcast. We are not inclined to agree with the general scope appellant attaches to the word "relationship" and whether it applies to non-customers, but we need not resolve this to dispose of the issue before us.[11] It is clear from the record that appellant had a "relationship" with appellee as a customer, and that even if—as his complaint alleges—some initial calls to Comcast were made as a non-customer, they later formed a part of the parties' relationship by virtue of his having become a customer. *See* MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* http://www.m-w.com/dictionary/relationship; http://m-w.com/dictionary/related (defining "relationship" as "the state of being related or interrelated" and "related" as "connected by reason of an established or discoverable relation.") (last visited December 9, 2009). Therefore, we hold only that the term "relationship" is sufficiently broad to include the calls that appellant allegedly made either as a customer or as a non-customer, so that the dispute in this case is captured by the broad language of the Arbitration Provision.

Appellant also raises a variant of this argument by stating that "[t]here is no need ever to refer to the Services Agree-

---

expressly excludes several specific types of dispute (namely, small claims, intellectual property disputes, franchise disputes, and claims for unauthorized use or receipt of service). It does not, therefore, bind customers to arbitrate *all* claims they might ever have against appellee, and it does not seem to us that a customer would necessarily misunderstand that language.

11. Much of appellant's arguments are made with reference to a class of persons, but this suit has never attained class status, so we will consider only appellant's factual circumstances.

ment, the Arbitration Provision therein, or any Services (whether provided to Appellant or anyone) to *fully* resolve every aspect of the merits of Appellant's claims" (emphasis in original). Appellant concludes this point by stating that "[n]o aspect of Appellant's relationship with [appellee] ... is about Appellant being subjected to surreptitious, illegal conduct by [appellee]." Again, appellant's premise is inaccurate. We cannot fully resolve a dispute arising from the parties' relationship without referring to an agreement that applies to said relationship. And we have already established that the claims in this dispute arise from telephone calls that were part of appellant's relationship with appellee. While one aspect of some of those phone calls was allegedly illegal, it was nonetheless part of the parties' relationship and was therefore subject to the Arbitration Provision. Therefore, appellant's last argument that his claims are beyond the scope of the Arbitration Provision is unpersuasive, and we must look to the Arbitration Provision to resolve the instant dispute.

Before concluding this part of our discussion, we should address footnote twenty-two of appellant's brief. Because appellant attached this footnote to the broad, concluding sentence of his argument, and because it spans two pages of single-space text and addresses two separate arguments, we feel it should be treated as substantive and included in the body of our discussion. Appellant argues that the clause "you or Comcast may elect to arbitrate that Dispute" implies that, because "Appellant acted first, electing to litigate in court," the dispute must be heard in court. Appellant also argues that the Arbitration Provision is contingent upon failure of an "informal dispute resolution process described in this Agreement" but that is never actually described.

We rejected both of these arguments in *Doyle v. Fin. Am., LLC,* 173 Md.App. 370, 918 A.2d 1266 (2007). The arbitration clause in *Doyle* included a sentence which read: "However, if you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be resolved, at your option or ours, by arbitration

in accordance with this agreement." *Id.* at 377, 918 A.2d 1266. As in *Doyle,* appellant's first argument is contrary to the plain and common-sense reading of the clause, which is that if either party elects to arbitrate the dispute, it must be arbitrated. We will not discuss every permutation because it suffices to say that the clause gives *either* party the option to compel *arbitration,* but it gives *neither* party the option to compel *litigation. See Id.* at 379, 918 A.2d 1266.

 Second, appellant argues that because the informal process described elsewhere in the Agreement only applies to certain types of disputes,[12] and not the instant dispute, the condition precedent fails. We disagree. The Arbitration Provision applies to disputes that "cannot be resolved through the informal dispute resolution process described in the Agreement." Certainly, if the informal dispute resolution applies only to certain types of disputes, then those disputes to which it does not apply "cannot be resolved through the informal dispute resolution process." Thus, the plain meaning of this introductory clause does not limit the Arbitration provision to the types of dispute expressly described in the term outlining the "informal dispute resolution process." As in *Doyle,* the "informal dispute resolution process" is merely a suggested option and not a condition precedent to the Arbitration Provision. *Id.* at 377, 918 A.2d 1266. We also note that, as in *Doyle,* by filing suit, appellant "determined to forgo any attempts at resolving the matter amicably through informal means and filed a complaint against appellee" and has, "in essence" waived his ability to challenge the Arbitration Provision on this ground. *See id.* at 377–79, 918 A.2d 1266.

## B. Waiver

Appellant argues that appellee waived its right to arbitrate the dispute when it: 1) opposed appellant's motion for a TRO

---

12. A separate part of the Agreement, entitled "IMPORTANT INFORMA-TION FOR VIDEO CUSTOMERS" describes "CUSTOMER COM-PLAINT PROCEDURES." It then describes how customers should proceed with cable television service and billing complaints and lists several methods of contacting Comcast.

without invoking the Arbitration Provision (which appellee conceded might not preclude injunctive relief); 2) filed an alternative motion for summary judgment in conjunction with one of three motions to dismiss; 3) asked the court to instruct the arbitrator to hear appellant's claims on an individual, rather than class, basis; and 4) sought to remove the case to federal court.

The Maryland Arbitration Act "expresses the legislative policy favoring enforcement of agreements to arbitrate." *Cheek v. United Healthcare of the Mid–Atl., Inc.,* 378 Md. 139, 146, 835 A.2d 656 (2003) (citations and internal quotation marks omitted); *accord Brendsel v. Winchester Constr. Co.,* 392 Md. 601, 630, 898 A.2d 472 (2006). In light of this policy favoring arbitration, we must determine whether a party has waived the right to arbitration. The Court of Appeals held, in *Charles J. Frank, Inc. v. Associated Jewish Charities, Inc.,* 294 Md. 443, 450 A.2d 1304 (1982), that "[because] the right to arbitrate is a matter of contract, it is possible for parties to waive that right." *Id.* at 448, 450 A.2d 1304. The Court then extended the general contractual waiver rule to hold that an arbitration agreement is waived by acts "inconsistent with an intention to insist upon enforcing such provisions." *Id.* at 449, 450 A.2d 1304 (citing *BarGale Industries, Inc. v. Robert Realty Co.,* 275 Md. 638, 643, 343 A.2d 529 (1975)). "The intention to waive must be clearly established and will not be inferred from equivocal acts or language." *Frank* at 449, 450 A.2d 1304 (citing *BarGale,* 275 Md. at 644, 343 A.2d 529). Thus, waiver is a question of intent that ordinarily turns on the factual circumstances of each case. *Frank* at 449, 450 A.2d 1304.

Judge Zarnoch, writing for our Court, recently summarized Maryland case law on intent to waive arbitration:

A finding of such a waiver is highly factual and a decision by the circuit court premised on those facts will not be disturbed on appeal unless it is clearly erroneous.

On a number of occasions, Maryland appellate courts have addressed the issue of whether the right to arbitrate has

been waived by participation in litigation that is inconsistent with an intent to insist upon enforcing arbitration. Participation in a judicial proceeding that results in a final judgment may, in certain circumstances, waive the right to arbitrate. Some limited participation in judicial proceedings does not constitute a waiver. Whether an answer directed to the merits is filed is a factor. Participation in extensive discovery is a factor in determining waiver. However, also relevant is whether a party utilized discovery devices that would not have been available in arbitration. Delay in attempting to compel arbitration, by itself, may not be conclusive, although coupled with prejudice to the other party can support a finding of waiver. The filing of suit can be a significant act in a waiver calculus, and in some instances it perhaps could be dispositive. Nevertheless, if there is a legitimate reason for participating in litigation, it will not be deemed a waiver.

*Abramson v. Wildman,* 184 Md.App. 189, 200–201, 964 A.2d 703 (2009) (internal citations and quotation marks omitted). Appellant points to several of appellee's actions that allegedly waived arbitration. Our discussion analyzes each to determine whether any single act waived arbitration and then tests whether appellant's entire course of conduct, taken as a whole, manifested its intent to waive arbitration.

*1. Appellee's TRO Opposition*

First, appellant argues that appellee waived arbitration by 1) opposing appellant's motion for a TRO without invoking the Arbitration Provision and 2) conceding that the Arbitration Provision might not preclude injunctive relief. We note, first, that appellant is factually incorrect in that appellee's TRO opposition expressly invoked and reserved the right to arbitrate even though it recognized that the Arbitration Provision itself permitted appellant to invoke the Court's jurisdiction for the limited purposes of seeking injunctive relief. Second, appellee's concession that Maryland law reserves the right to maintain the *status quo* by injunction was not inconsistent with appellee's intent to enforce the Arbitra-

tion Provision. Appellee merely recognized that Maryland law creates a narrow and default exception to the Arbitration Provision and that it had to act to preserve its interests. *See The Redemptorists v. Coulthard Servs.*, 145 Md.App. 116, 156 n. 9, 801 A.2d 1104 (2002) (non-movant may present evidence to the trial court that a preliminary injunction is warranted); *see also Brendsel*, 392 Md. 601, 898 A.2d 472 (movant did not waive arbitration by filing for mechanic's lien). Appellee's TRO opposition, alone, did not waive the Arbitration Provision.

*2. Appellee's Alternative Motion for Summary Judgment*

 Next, appellant relies on a misstatement of federal case law to argue that appellee's motion for summary judgment waived arbitration.[13] Appellant draws primarily from two federal cases, *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250 (4th Cir.1987), and *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156 (5th Cir.1986), to support his assertion that "[a] party filing a motion for summary judgment, seeking a judicial determination on the merits of the action, standing alone, waives arbitration." This is the holding of neither of these cases, each of which examined a variety of factors and rested its conclusion on an intention manifested by a course of conduct. Moreover, both of these cases specifically state that there are certain pleadings which, alone, do not waive arbitration. The *Fraser* opinion cites federal precedent that "[n]either delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." 817 F.2d at 252 (citations omitted). Similarly, the *Price* court distinguished its case from those in which the movant had filed a "perfunctory motion to dismiss before answering." 791 F.2d at 1162.

The closest that appellant comes to his sweeping conclusion that a motion for summary judgment suffices to waive arbitration is *dicta* from *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 465 (2d Cir.1985), a case that

---

**13.** *See* note 4, *supra*.

ultimately affirmed a trial court's motion to compel arbitration. Appellant draws his quote from a part of the opinion that rejected the non-movant's argument that to accept both a motion to compel and a motion to dismiss would disserve judicial economy by encouraging unwarranted motions to dismiss. *Id.* at 465. The *Sweater Bee* court hypothesized that judicial economy would be preserved because "if matters going outside the pleadings are presented to and not excluded by the court, the motion is, of course, treated as one for summary judgment . . ., at which point the effect would be to preclude any arbitration of the issue by virtue of waiver." *Id.* To support this (hypothetical) statement, the *Sweater Bee* court cited *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1057 (E.D.N.Y.1975), which held that the movant's "submission of its summary judgment motion, coupled with its silence on the arbitration issue for nearly two years from the institution of the action, must be viewed as an unequivocal expression of intent to seek a judicial determination of the merits of this action rather than arbitration." *Id.* at 1060. Thus, a thorough examination of appellant's citations returns us to a rule substantially similar to Maryland's comprehensive factual examination, and we find no support for appellant's contention that a motion for summary judgment, without more, waives arbitration.[14]

Even if we overlook appellant's misstatement of the rules of *Fraser, Price,* and *Weight Watchers* (by way of *Sweater Bee* ), the movant in each of those cases did much more than simply file for summary judgment. The movant in *Fraser* was adjudged to have waived arbitration because, over the course of

---

**14.** Appellant cites several other cases, none of which establish the hard-and-fast rule that appellant argues. *St. Mary's Med. Center, Inc. v. Disco Aluminum Prod. Co.,* 969 F.2d 585 (7th Cir.1992) (movant waived arbitration by participating in ten months of litigation, including filing a motion to dismiss or for summary judgment, while never mentioning arbitration until after it lost its motion); *RTKL Assoc., Inc. v. Four Villages Ltd. P'hip,* 95 Md.App. 135, 620 A.2d 351 (1993) (movant waived arbitration by actively participating in five years of litigation including depositions, other discovery, and filing of a motion for summary judgment, all before moving to compel arbitration)

five years, it engaged in extensive litigation, including an answer, counterclaim, at least thirty-five depositions, four discovery motions, two motions *in limine*, one motion for partial summary judgment, and three motions to dismiss. 817 F.2d at 251. Only then, five years from the initial complaint, did the movant seek to compel arbitration. *Id.* Similarly, the *Price* court specifically noted that the movant had "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration[,]" all while imposing a seventeen-month delay and causing disclosures. 791 F.2d at 1159. Here, appellee immediately raised and reserved its right to arbitrate, filing motions to compel arbitration with each of its motions to dismiss and its alternative motion for summary judgment. The proceedings in trial court here involved nothing close to the amount of litigation in the aforementioned cases, and they therefore do not control our decision.[15]

■■■ Having established that a motion for summary judgment does not *necessarily* waive arbitration, the legal possibility remains that a motion for summary judgment *could* waive arbitration. In this case, it did not. Appellee's motion for summary judgment is strikingly similar to the pleadings in *The Redemptorists*, which we held did not waive arbitration. The plaintiffs in that case opposed arbitration, arguing that the defendant's "act of attaching [a] certification to its motion to dismiss for lack of jurisdiction transformed that motion into a motion for summary judgment and, as such, catapulted [Coulthard] into the judicial forum, resulting in waiver of any right to arbitrate the claims against it."[16] 145 Md.App. at 143, 801 A.2d 1104. We rejected that argument, stating, *id.:*

---

**15.** The parties did not address the amount of their discovery, and though the record does reveal some, it does not appear to be so "extensive" as to indicate waiver.

**16.** It appears that the Redemptorists misconstrued Maryland Rule 2–322(c), which states that a motion to dismiss for failure to state a claim

We do not consider the act of filing a motion to dismiss on a jurisdictional ground to be an unequivocal demonstration . . . that [the movant] intended to waive its right to arbitrate the claims against it, and to participate instead in a judicial forum. [The] motion did not address the merits of the claims in the initial complaint. It was limited to what it perceived as a procedural flaw in the complaint that, if meritorious, could have disposed of the court's jurisdiction to consider the complaint.

Here, appellee's motion to dismiss relied upon a single document outside of the pleadings—a certificate issued by the Maryland Public Service Commission—in order to argue that appellee was expressly exempted by the very statute giving rise to appellant's claims.[17] According to Rule 2–322(c), if the court had considered it necessary to refer to that attached document, appellee's motion to dismiss automatically would have been treated as a motion for summary judgment, subject to the procedures of Maryland Rule 2–501. Appellee's motion was, as in *The Redemptorists*, "limited to . . . a procedural flaw in the complaint that, if meritorious, could have disposed of the court's jurisdiction to consider the complaint." 145 Md.App. at 143, 801 A.2d 1104. Our decision leaves open the possibility that a summary judgment motion could waive arbitration, but it would have to address the essential merits of the case and result in something approaching the "voluminously documented defense" cited in *Weight Watchers*, 398 F.Supp. at 1061. This was not so here, and appellee's motion for

---

(not for lack of jurisdiction) is to be treated as a motion for summary judgment.

17. Appellant argued that it was excepted from liability under CJ § 10–402(c)(1)(i), which provides immunity for "an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service . . . while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communications service to the public may not utilize service observing or random monitoring except for mechanical or service quality control checks."

summary judgment did not evidence an intent to waive arbitration.

### 3. Appellee's Proposed Arbitration Order

■ Appellant argues that appellee waived its right to arbitrate when it argued, in one of its motions to compel arbitration, that "[appellant] is barred from arbitrating his claims on a class basis, and the Court should direct the arbitrator to conduct individual arbitration as to only [appellant]'s claims." Appellant argues that the Arbitration Provision reserves the class action waiver clause's general enforceability for the courts to decide. Then, assuming the class action waiver is enforceable, the Arbitration Provision leaves the arbitrator to decide whether the clause *applies* to a given dispute.[18] Appellant argues that by asking the circuit court to apply the class action waiver clause through an order addressed to the arbitrator, appellee invoked the jurisdiction of the court and waived its right to arbitrate. It appears from the briefs that the parties misunderstand each other's arguments on this point, but we need not explore the legal merits of their dispute over whether the class action waiver clause is enforceable or applicable. It suffices to say that, judging from the record, appellee sought to protect a legal right it legitimately believed it possessed: the right to have the arbitration proceed on an individual, rather than class basis. Appellee asked the court to determine a single procedural aspect of the dispute that it legitimately believed lay outside the scope of the Arbitration Provision. Taken in context, appellee's request *reaffirmed* its intent to arbitrate the dispute as a whole. Appellee's request amounted to little more than a paragraph

---

**18.** Appellant's brief states the argument, thusly:

> Here, though the Arbitration Provision excluded from the definition of Dispute, and thus from being subject to arbitration, the "enforceability of the class action waiver clause" assuming it is indeed enforceable, whether the class action waiver clause is applicable and the manner in which it applies to a Dispute would, presumably, be a matter for the arbitrator to decide.

We believe that our restatement of the issue correctly interprets this argument.

in its brief and a few moments at argument, causing no prejudice, delay, or other concern. This single act did not therefore waive arbitration.

### 4. Appellee's Removal to Federal Court

■ Appellant next argues that appellee waived its right to arbitrate by seeking removal to federal court. Appellant cites *Lapides v. Bd. of Regents*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), and an unpublished opinion from the U.S. District Court for the Northern District of Texas in *AFD Fund v. Hinton, Inc.*, Civil Action No. 3:02–CV–2417–L, 2004 WL 2296983, 2004 U.S. Dist. LEXIS 20524 (N.D.Tex. Oct.13, 2004), to argue this point.

First, appellant's reliance on *AFD Fund v. Hinton* is factually misplaced. The court noted that the movant in that case

first demanded arbitration . . . three weeks before the trial date, three days before the court's original deadline for filing pretrial materials, one day after the court vacated the pretrial materials deadline and pretrial conference setting . . ., four months after [the non-movant] filed its motion for summary judgment, and almost two years after the petition was filed. Since the filing of the petition, [the movant] has removed the case to federal court, filed an answer, responded to discovery . . ., and attended mediation

*Id.* at 7–8. Appellee did not delay, answer, or engage in substantive litigation even remotely approaching that in *AFD Fund v. Hinton*, and so we cannot draw from it the inference appellant wants.

Second, appellant's reliance on *Lapides* is legally misplaced. In *Lapides*, the Supreme Court held that a state waives its Eleventh Amendment immunity when it removes a case from state court to federal court. The Supreme Court noted that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States'

extends to the case at hand." *Id.* at 619, 122 S.Ct. 1640. In this case, appellee invoked the court's jurisdiction but did not do so in a completely contradictory manner, such as in *Lapides.* Appellee did not argue in federal court that the court lacked *all* jurisdiction over the matter, but rather that the court's jurisdiction was *limited*—either by the parties' agreement or by operation of the law and pleadings.[19] This was not inherently contradictory. Therefore, *Lapides* does not inform our analysis.

In summary, the record shows that appellee did not waive its right to arbitrate the dispute. Appellee did not delay, moving immediately and repeatedly to compel arbitration. Appellee filed only perfunctory motions to protect its legal interests and did not answer any of the complaints. None of appellee's actions was sufficient to waive arbitration because, even when taken together, there was no manifest intent to waive arbitration. Appellee undertook "limited participation in judicial proceedings," which definitively *does not* waive arbitration. *Abramson,* 184 Md.App. at 201, 964 A.2d 703. Finally, there is no evidence that appellee's actions have prejudiced appellant, nor is there reason to believe that compelling arbitration now would cause prejudice. For these reasons, we hold that appellee did not waive arbitration.

### C. Identification of Parties

Appellant also argues that the entire Service Agreement, including the Arbitration Provision, is unenforceable because it fails to identify the contracting parties. Appellant relies upon the principle stated in *Robinson v. Gardiner,* 196 Md. 213, 217, 76 A.2d 354 (1950):

---

**19.** We note that while this would seem to support appellant's contention that appellee invoked the federal court's jurisdiction, it does not cross the threshold of waiver. Indeed, a movant for arbitration must *necessarily* invoke the court's jurisdiction to some extent, if only to compel arbitration. If we were to hold that merely invoking a court's jurisdiction necessarily waives arbitration, courts could never compel arbitration (except *sua sponte,* which should not be the only method). Therefore, we must examine the movant's course of conduct.

No action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms. The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties.

*Accord Bd. of Tr.'s of the Md. Teachers & State Employees Supplemental Ret. Plans v. Life & Health Ins. Guar. Corp.*, 335 Md. 176, 202, 642 A.2d 856 (1994).

Notably, appellant does not argue that any of the parties to this dispute are absent from the agreement and that the agreement is therefore vague and indefinite between them. Instead, appellant points to the fact that he was forced to name several "Doe" defendants and alleges that appellee "has voluntarily chosen to hide the identity of the various entities through which it operates." Even assuming that appellant's allegation is true, we fail to see how it is relevant to whether the parties collectively named in this suit are subject to arbitration. It seems appellant would have us hold that because there may be parties to the agreement that he has not identified, the entire Agreement and the Arbitration Provision should not apply to parties that are clearly identified in them. We do not accept this argument. The Agreement's definition of "Comcast" was enough to identify the present parties, and appellant's claims against them survived motions to dismiss and for summary judgment. If appellant discovers that he has claims against entities not subject to the Arbitration Provision, he remains free to pursue them in court, while the Arbitration Provision remains in force between him and the collective appellee.

## D. Unconscionability

 Appellant next argues that the Arbitration Provision is unenforceable as unconscionable. An arbitration provision is void if it is unconscionable. *Walther v. Sovereign Bank*, 386 Md. 412, 426, 872 A.2d 735 (2005). The prevailing

view is that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable. *Doyle,* 173 Md.App. at 383, 918 A.2d 1266 (citing *Holloman,* 391 Md. at 603, 894 A.2d 547 (Bell, C. J., and Greene, J., dissenting)); *see* RESTATEMENT (SECOND) OF CONTRACTS, § 208 ("gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms"). Although this precise statement has only been made by a dissenting minority of the Court of Appeals, we believe that it accurately reflects Maryland Law as set forth in *Walther,* 386 Md. at 430–31, 872 A.2d 735:

> A contract of adhesion is not automatically deemed *per se* unconscionable.... Therefore, even assuming *arguendo* that the [contract in question] is in fact a contract of adhesion, that is not the end of the inquiry—we must examine the *substance* of the particular provision at issue, the arbitration clause, to decide whether it is unconscionable.

Procedural unconscionability "deals with the process of making a contract" and "looks much like fraud or duress." *Id.* at 426–27, 872 A.2d 735 (citations omitted). It includes concerns such as the use of "fine print and convoluted or unclear language," and "deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms" and "one party's lack of meaningful choice." *Id.* (citations omitted).

Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief ..., and [it] reminds us of contracts or clauses contrary to public policy or illegal. *Id.* at 427, 872 A.2d 735 (quoting *Carlson v. General Motors Corp.,* 883 F.2d 287 (4th Cir.1989)). There is some threshold of imbalance, and we "will not simply excise or ignore terms merely because, in the given case, they may

operate to the perceived detriment of the weaker party." *See Walther*, 386 Md. at 431, 872 A.2d 735 (quoting *Meyer v. State Farm Fire & Cas. Co.*, 85 Md.App. 83, 90, 582 A.2d 275 (1990)). Substantively unconscionable terms are "unreasonably favorable to the more powerful party," "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy," "attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law," or are otherwise "unreasonably and unexpectedly harsh." *Walther*, 386 Md. at 426, 872 A.2d 735.

## 1. Procedural Unconscionability

██ Appellant argues that the Arbitration Provision was procedurally unconscionable as a contract of adhesion. A contract of adhesion "is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." 386 Md. at 430, 872 A.2d 735 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. b (1971); BLACK'S LAW DICTIONARY 342 (8th ed.2004)). Appellant relies mainly upon appellee's market power to argue that we should "look at the contract and its terms with some special care." *Walther*, 386 Md. at 430, 872 A.2d 735 (quoting *Meyer*, 85 Md.App. at 89, 582 A.2d 275).

We do not need to examine the parties' relative bargaining power to determine whether the Arbitration Provision was a contract of adhesion because appellant had a meaningful choice. In *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 829 A.2d 626 (2003), the Court of Appeals held that a unilateral amendment, including an arbitration provision, was not procedurally unconscionable where it was mailed in the same manner that appellee mailed its notice. The court also noted that the amendment "specifically provided the option to reject the services if [the customer] did not agree to the new terms and conditions, including the arbitration provision." In this case, appellant's unilateral amendment notice was clear and conspicuous, having been distributed as a distinct document addressing only the Arbitration Provision. There was an equally

clear and conspicuous (and convenient) opt-out provision, so that the term was not offered on a "take-it-or-leave-it" basis with respect to the entire agreement. In fact, the Arbitration Provision in this case was even more favorable to the customer than that upheld in *Mattingly* because appellee's customers could reject the Arbitration Provision with *no effect* on the rest of the agreement.

### 1. Substantive Unconscionability

Our determination that the Arbitration Provision was not procedurally unconscionable is enough to dispense with appellant's unconscionability argument. Nevertheless, we feel it prudent to address appellant's substantive unconscionability arguments, as the Court of Appeals did in *Walther*, 386 Md. at 431, 872 A.2d 735 ("Therefore, even assuming *arguendo* that the [contract in question] is in fact a contract of adhesion, that is not the end of the inquiry—we must examine the substance of the particular provision at issue, the arbitration clause, to decide whether it is unconscionable.") (citing *Meyer*, 85 Md. App. at 89–90, 582 A.2d 275).

Appellant argues that the Arbitration Provision is substantively unconscionable because it: 1) requires that the arbitrator decide the "validity, enforceability and scope" of the Provision; 2) requires that the arbitrator apply the rules of the Arbitration Provision where they conflict with the arbitrator's rules; 3) requires the arbitrator to enforce the Arbitration Provision as written; 4) requires the customer to reimburse appellee if appellee successfully overturns an arbitration award greater than $75,000.00; 5) acknowledges that the arbitration may include only limited discovery; and 6) is enforceable only if the class action waiver clause is also legal and enforceable.

As to appellant's first point of contention, the "validity, enforceability and scope" of a broad arbitration provision is left to the arbitrator by operation of Maryland law. *Gold Coast*, 298 Md. at 107, 468 A.2d 91 ("ordinarily the question of substantive arbitrability initially should be left to

the decision of the arbitrator"). It would be plainly wrong to hold that parties cannot contract in accordance with public policy, so we cannot consider this as grounds for unconscionability.

▮ We also see nothing unconscionable in the next two terms appellant complains of, which require the arbitrator to resolve conflicts of rules in favor of the Arbitration Provision and to enforce the Arbitration Provision as written.[20] Appellant contends that appellee could arbitrarily decide, at the conclusion of arbitration, that the arbitrator had violated these rules, and therefore perpetually avoid any award for appellant. This argument, while purely conjectural, supposes an unreasonable interpretation of the Arbitration Provision. Furthermore, these clauses merely state that the arbitrator should enforce the terms of the Provision and are almost superfluous and Appellant's argument that they are unconscionable only echoes his attack on the remaining terms. These terms we address separately.

▮ Next, appellant turns to the Arbitration Provision's requirement that the customer reimburse appellee if appellee successfully overturns an arbitration award greater than $75,000.00. While this statement is an accurate reading of the agreement, appellant neglects to mention that the opposite is also true, for the Arbitration Provision states that the *prevailing appellant* is entitled to reasonable attorney's fees and costs. Thus, this term is fair on its face. Appellant's argument is not necessarily disingenuous, but nevertheless incorrect.[21] Continuing, in spite of this clear language, appellant

---

20. After raising these terms, appellant addresses them only in a footnote, where he labels them "the most unconscionable of the provisions within the Arbitration Provision."

21. Appellant also argues that claims against appellee would never escape the small claims minimum imposed by section "j" of the Arbitration Provision. Appellant's argument rests on the false assumption that a claimant could not recover more than what he or she was billed because the Service Agreement is limited to service-related dis-

argues that this provision "would, in practical terms, never apply to [appellee] since it is hard to conceive of an award [appellee] might receive against Appellant for a Dispute (as always, over Services) that would even approach $75,000.00."

First, appellant is incorrect because, as we have seen, a "Dispute" can arise from any aspect of the parties' relationship and might not be service-related. Second, even if appellant's last point were true, it ignores the possibility that an arbitrator could award a customer over $75,000.00, in which case appellee could appeal. Appellant also argues that these terms are "unfair" because they do not provide a "plain statement . . . as to how the three-arbitrator panel will review the underlying award." Appellant fails to explain how a term that does not specify arbitration appeal procedures has a disparate impact upon one party versus the other. But there is no authority to support a conclusion that this vagueness renders the agreement unconscionable. For these reasons, the review and fee-shifting terms of the Arbitration Provision are not unconscionable.

 Appellant next takes offense to the Arbitration Provision's notice that arbitration "may result in limited discovery, depending on the rules of the arbitration organization that is chosen to resolve the dispute." First, we note that this only warns of a potential limitation and is not an identifiable restriction. Nevertheless, appellant argues that arbitration must be avoided because it may fail to meet some guaranteed minimum discovery (whose legal basis appellant does not identify). To support his position, appellant cites to two California decisions.

First, the Supreme Court of California ruled in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 105, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Cal.2000) that

adequate discovery is indispensable for the vindication of [California Fair Employment and Housing Act ("FEHA")]

---

putes. We have already noted that the Arbitration Provision is not so limited, and appellant's argument therefore fails.

claims. The employer does not dispute the point, but contends that the arbitration agreement at issue in this case does provide for adequate discovery by incorporating by reference all the rules set forth in the [California Arbitration Act].

After reviewing the facts of the case, the Court accepted the employer's argument:

> [A]lthough the employees are correct that they are entitled to sufficient discovery as a means of vindicating their sexual discrimination claims, we hold that the employer, by agreeing to arbitrate the FEHA claim, has already impliedly consented to such discovery. Therefore, lack of discovery is not grounds for holding a FEHA claim inarbitrable.

*Id.* at 105–106, 99 Cal.Rptr.2d 745, 6 P.3d 669. Even if we were to adopt appellant's argument by assuming, first, that California's special concern with an employment arbitration applies to this case, and second, that we should act preemptively rather than wait for appellant to challenge the arbitration by appeal, we would nevertheless arrive at the same conclusion as the *Armendariz* court. The parties' Arbitration Provision, like the subject of the *Armendariz* opinion, explicitly incorporates federal arbitration law and its safeguards.[22]

Appellant also cites an unreported opinion from the United States District Court for the Eastern District of California in *Sherwood v. Blue Cross*, NO. CIV. S–07–633 LKK/DAD, 2007 U.S. Dist. LEXIS 70816 (E.D.Cal. Sept. 13, 2007). There, the court declined to compel arbitration because it was concerned with "the practical reality of employment disputes" that "[o]ftentimes, the employer already has in its possession many of the documents relevant to an employment discrimination case

---

**22.** The Arbitration Provision states:

> Because the Service(s) provided to you by Comcast concerns interstate commerce, the Federal Arbitration Act ("FAA"), not state arbitration law, shall govern the arbitrability of all Disputes. However, applicable federal law or the law of the state where you receive the service from Comcast may apply to and govern the substance of any Disputes. Any state statute pertaining to arbitration shall not be applicable under this Arbitration Provision.

as well as having in its employ many of the relevant witnesses." *Id.* at 14 (*citing Mercuro v. Superior Court*, 96 Cal.App.4th 167, 183, 116 Cal.Rptr.2d 671 (2002)) (internal quotation marks omitted). The court concluded that this was unconscionable because of something akin to the "disparate impact" theory of constitutional law: "Accordingly, although limitations on discovery may ostensibly apply to both parties, they work in effect to disadvantage only the employee." *Sherwood* at 14.

Appellant argues that the concerns cited in *Sherwood* "are applicable, here, rendering Comcast's purported Arbitration Provision unconscionable as a matter of law." But even if we were we inclined to follow the reasoning in *Sherwood*, two important facts distinguish this case from it. First, this case is not an employment dispute that raises the particular concerns of *Sherwood*. Second, the court's decision in *Sherwood* turned almost completely on a single term of the arbitration agreement that expressly restricted the parties to only one deposition. *Id.* at 12–13. We see nothing in the record or case law that would compel us to hold, as a matter of law, that discovery in arbitration will necessarily be so limited as to render the Arbitration Provision unconscionable. Appellant's concern over asymmetric information is inherent to many types of cases. This is why we have the discovery process, which the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, extends to arbitration panels and which process was *not* expressly curtailed by the Arbitration Provision in this case. *See* 9 U.S.C. § § 7, 10. Furthermore, we find it persuasive that the United States Supreme Court allows discrimination claims to be arbitrated despite limited discovery, even going so far as to note that "an important counterweight to the reduced discovery . . . is that arbitrators are not bound by the rules of evidence." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (U.S.1991). Parties commonly agree to arbitrate under limited discovery, and to adopt appellant's position would require us to speculate that he will be denied some fundamental—and unspecified—

level of discovery. Neither the record nor the law provides reason for such a holding.

 Finally, appellant argues that the Arbitration Provision is unconscionable because its application depends on the enforceability of its class action waiver clause. The Court of Appeals explicitly rejected this exact argument in *Walther:*

> We cannot ignore the strong policy, made clear in both federal and Maryland law, that favors the enforcement of arbitration provisions. We believe that the opinions to which petitioners cite that hold otherwise give short shrift to this principle. Therefore, we do not find the no-class-action provision to be so one-sided or oppressive to petitioners as to render the arbitration agreement at issue unconscionable.

386 Md. at 438, 872 A.2d 735. We see no reason why a term that depends on another enforceable provision would be unconscionable. If anything, this contingency would appear to favor appellant's desire to avoid arbitration.

Our analysis has shown that none of the Arbitration Provision's features are unconscionable, and though a whole can sometimes be greater than the sum of its parts, this is not such a whole. Taken together, the terms of the Arbitration Provision do not present the danger of oppression, unfair surprise, or an egregious imbalance of obligations and rights. Appellant has failed to demonstrate that the Arbitration Provision to which he was bound was unconscionable, and it is not grounds for error.

These parties entered into a binding Arbitration Provision that governs this dispute. Appellee's actions did not waive its right to arbitration, and the terms of the Arbitration provision are not unconscionable. No other argument having been made, we find that the trial court was not in error when it compelled arbitration of this dispute.

**APPEAL NO. 435 DISMISSED.**

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IN APPEAL NO. 2102 AFFIRMED. COSTS TO BE PAID BY APPELLANT.